THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TEIQUAWN WILLIAMS, Appellant. [48 NYS3d 405]—

Appeal by the defendant from a judgment of the Supreme Court, Queens County (Knopf, J.), rendered May 16, 2013, convicting him of assault in the second degree, criminal possession of a weapon in the third degree (two counts), and criminal possession of a weapon in the fourth degree, upon a jury verdict, and imposing sentence. The appeal brings up for review an order of the same court (Aloise, J.) dated June 20, 2012, which, after a hearing, denied that branch of the defendant's omnibus motion which was to suppress physical evidence.

Ordered that the judgment is modified, on the law, (1) by vacating the convictions of criminal possession of a weapon in the third degree, vacating the sentences imposed thereon, and dismissing those counts of the indictment, and (2) by reducing the conviction of assault in the second degree to assault in the third degree and vacating the sentence imposed thereon; as so modified, the judgment is affirmed, that branch of the defendant's omnibus motion which was to suppress physical evidence is granted, the order dated June 20, 2012, is modified accordingly, and the matter is remitted to the Supreme Court, Queens County, for sentencing on the conviction of assault in the third degree.

The defendant was convicted, after a jury trial, of assault in the second degree, criminal possession of a weapon in the third degree (two counts), and criminal possession of a weapon in the fourth degree. On appeal, the defendant contends that the Supreme Court should have granted that branch of his omnibus motion which was to suppress physical evidence that was recovered in a warrantless search of his home and his backyard. The defendant also contends that his conviction of assault in the second degree should be reversed since the People failed to establish that the complainant suffered physical injury, and that certain remarks made by the prosecutor during summation deprived him of a fair trial.

The following testimony was adduced at a *Mapp* hearing (*see Mapp v Ohio*, 367 US 643 [1961]). On the morning of the incident giving rise to the defendant's indictment and convictions, police officers responded to a report of an assault in progress with a possible firearm. When they arrived at the location, the defendant, upon seeing the police officers, ran into a residence. The complainant told the officers that the defendant had assaulted him with his fist and a miniature bat, and had threatened him with a metal pipe and a gun. When the police approached the door of the residence into which the defendant had run, the defendant's mother, who was standing outside, informed them that the defendant was in the residence with his wife and children. Finding the door closed and locked, the police kicked the door in. Immediately upon entering, the police saw the defendant and handcuffed him. Officers cleared the first floor of the house, and the children were safeguarded in a rear bedroom. An officer recovered a pipe from the landing of the stairway to the basement and a miniature bat from the backyard. While the first floor was being cleared, a detective and another officer searched the basement, but did not find any people or weapons. After they returned to the first floor, their sergeant ordered them to search the basement again to make sure they "didn't miss anything." During this second search, the detective located a firearm and magazine in a black bag inside the tank of the toilet bowl in the basement bathroom. The complainant and a witness identified the pipe, the bat, and the gun as the weapons the defendant had during the assault. In an omnibus motion, the defendant moved, inter alia, to suppress physical evidence, specifically the gun. The hearing court denied that branch of the motion, finding that the search of the house and the seizure of the gun were justified under the emergency doctrine, and that the search did not exceed the scope and duration of the emergency.

As an initial matter, the People are correct that the defendant's suppression contentions are only preserved with respect to the gun, which was the basis for his convictions of criminal possession of a weapon in the third degree, and not with respect to the bat, which was the basis for his conviction of criminal possession of a weapon in the fourth degree. Although the defendant moved in his omnibus motion to suppress "the physical evidence," he indicated in his motion papers that he was specifically moving to suppress the gun. In addition, in his posthearing memorandum, the defendant only argued that the secondary search that resulted in the recovery of the gun was illegal, and that the gun should be suppressed. Moreover, although the hearing court denied the defendant's motion to suppress "the

physical evidence," the only evidence discussed in the court's order was the gun. Since the defendant failed to raise the issue that the backyard was within the curtilage of his home, and failed to make any arguments before the hearing court relating to the search of the backyard and the seizure of the bat, his contention that the bat should have been suppressed is unpreserved for appellate review (*see People v Vann*, 92 AD3d 702, 703 [2012]; *People v Jones*, 62 AD3d 902, 902 [2009]; *People v Dantze*, 283 AD2d 438, 438 [2001]), and we decline to reach the issue in the exercise of our interest of justice jurisdiction.

However, we agree with the defendant that the hearing court should have suppressed the gun. Although "warrantless entries into a home are 'presumptively unreasonable' " (*People v Molnar*, 98 NY2d 328, 331 [2002], quoting *Payton v New York*, 445 US 573, 586 [1980]), a warrantless search and seizure in a protected area may be lawful under some circumstances pursuant to the emergency doctrine (*see People v Mitchell*, 39 NY2d 173, 177-178 [1976]; *People v Rossi*, 99 AD3d 947, 949 [2012], *affd* 24 NY3d 968 [2014]). The emergency exception "sanctions warrantless searches and seizures in circumstances presenting an immediate danger to life or property" (*People v Calhoun*, 49 NY2d 398, 403 [1980]; *see People v Mitchell*, 39 NY2d at 178; *People v Mormon*, 100 AD3d 782, 783 [2012]). "This exception must be narrowly construed because it is susceptible of abuse and may be used to validate an otherwise unlawful arrest or seizure" (*People v Mormon*, 100 AD3d at 783 [internal quotation marks omitted]; *see People v Guins*, 165 AD2d 549, 552 [1991]). The People have the burden of justifying the warrantless search (*see People v Hodge*, 44 NY2d 553, 557 [1978]; *People v Mormon*, 100 AD3d at 783; *People v Liggins*, 64 AD3d 1213, 1215 [2009]; *People v Fravel*, 35 AD3d 1148, 1150 [2006]). Moreover, the scope and duration of the search must be limited by, and reasonably related to, the exigencies of the situation (*see Mincey v Arizona*, 437 US 385, 393 [1978]; *People v Knapp*, 52 NY2d 689, 696 [1981]; *People v Dillon*, 44 AD3d 1068, 1070 [2007]).

Here, the initial entry by the police into the defendant's home and the initial search for occupants and weapons was justified under the emergency doctrine (*see People v Timmons*, 54 AD3d 883, 884 [2008]; *People v Bower*, 27 AD3d 1122, 1124 [2006]; *People v Parker*, 299 AD2d 859, 860 [2002]). However, once the police had the defendant in handcuffs and had secured all of the occupants of the home in the rear bedroom, the emergency had abated (*see People v Jenkins*, 24 NY3d 62, 65 [2014]; *People v Knapp*, 52 NY2d at 696-697). As such, the second search of

the basement exceeded the duration of the emergency (*see People v Jenkins*, 24 NY3d at 65; *cf. People v Stanislaus-Blache*, 93 AD3d 740, 742 [2012]). Contrary to the People's contention, the police were aware, prior to commencing the second search, that the children were all safeguarded (*cf. People v Rossi*, 99 AD3d at 950-951). Accordingly, the hearing court should have granted that branch of the defendant's motion which was to suppress the gun. Without that evidence, there could not be sufficient evidence to prove the defendant's guilt of two counts of criminal possession of a weapon in the third degree, and those counts of the indictment must be dismissed (*see People v Jenkins*, 24 NY3d at 66; *People v Miranda-Hernandez*, 106 AD3d 838, 839 [2013]; *People v Carmichael*, 92 AD3d 687, 688 [2012]).

Turning to the defendant's contention that the evidence was legally insufficient to support his conviction of assault in the second degree, we find that the evidence, viewed in the light most favorable to the prosecution (*see People v Contes*, 60 NY2d 620, 621 [1983]), was legally insufficient to establish the defendant's guilt of this crime because the complainant did not suffer a "physical injury . . . by means of . . . a dangerous instrument" (Penal Law § 120.05 [2]; *see* Penal Law § 10.00 [9], [13]). The complainant testified that the defendant punched him on the left side of his face and hit him once above his right eyebrow with a miniature bat. The hit from the bat caused a "small cut" on his head that was treated at the scene with a piece of gauze, and he did not receive any further medical treatment for the head laceration. He testified that he experienced pain and swelling over his eye for about a week, and that his eye was bloodshot for about two weeks, but he did not testify that these conditions limited or diminished his ability to use his eye. Under these circumstances, there was insufficient evidence from which a jury could infer that the complainant suffered substantial pain or impairment of physical condition as a result of the defendant's use of the bat (*see People v Boney*, 119 AD3d 701, 702 [2014]; *People v Taylor*, 83 AD3d 1105, 1106 [2011]; *People v Baksh*, 43 AD3d 1072, 1073-1074 [2007]; *People v Briggs*, 285 AD2d 651, 652 [2001]; *People v Cheeks*, 161 AD2d 657, 657 [1990]). The injuries to the complainant's jaw and his difficulty chewing and yawning resulted from the defendant punching the complainant in the face with his fist, and not from his use of the bat. Thus, those injuries could not establish the defendant's guilt of assault in the second degree under Penal Law § 120.05 (2) (*see People v Owusu*, 93 NY2d 398, 399 [1999]). However, such evidence was legally sufficient to establish the defendant's guilt of assault in the third degree

(*see People v Chiddick*, 8 NY3d 445, 447 [2007]; *People v Rose*, 120 AD3d 593, 594 [2014]; *People v Gomez*, 43 AD3d 763, 763 [2007]). Accordingly, we modify the judgment by reducing the defendant's conviction of assault in the second degree to assault in the third degree, and we remit the matter to the Supreme Court, Queens County, for sentencing on the conviction of assault in the third degree (*see People v Kassebaum*, 95 NY2d 611, 618 [2001]; *People v McElroy*, 139 AD3d 980, 982 [2016]; *People v Ekwegbalu*, 131 AD3d 982, 984 [2015]; *People v Ragguete*, 120 AD3d 717, 718 [2014]).

The defendant's contention that certain comments made by the prosecutor during her summation were improper and deprived him of a fair trial is unpreserved for appellate review (*see* CPL 470.05 [2]; *People v McMillan*, 130 AD3d 651, 654 [2015], *lv granted* 26 NY3d 1090 [2015]; *People v Johnson*, 127 AD3d 1234, 1234 [2015]; *People v Jeudy*, 115 AD3d 982, 983 [2014]). In any event, the challenged remarks were fair comment on the evidence and the reasonable inferences to be drawn therefrom, were a fair response to arguments and issues raised by the defense, and did not deprive the defendant of a fair trial (*see People v Hawley*, 112 AD3d 968, 969 [2013]; *People v McGowan*, 111 AD3d 850, 851 [2013]; *People v McHarris*, 297 AD2d 824, 824 [2002]).

In light of our determination, we need not reach the defendant's remaining contentions. Leventhal, J.P., Cohen, Miller and Connolly, JJ., concur.